UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RONALD ROWE, and ) | |
| ANGELA ROWE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No.: 3:10-CV-164 |
| ) | (VARLAN/GUYTON) |
| REMBCO GEOTECHNICAL ) | |
| CONTRACTORS, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on Defendant's Motion for Summary Judgment [Doc. 24]. Plaintiffs did not file a response, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2. For the reasons explained below, the Court will grant defendant's motion.

**I.    Background**

Plaintiffs Ronald Rowe ("Rowe") and Angela Rowe ("Mrs. Rowe" and, together with Rowe, the "Rowes" or "plaintiffs") are married [Doc. 25]. They commenced this action, and later filed an amended complaint, asserting four causes of action against Rembco Geotechnical Contractors, Inc. ("Rembco" or "defendant"): violation of the Employee Retirement Income Security Act ("ERISA"), violation of the Americans with Disabilities Act ("ADA"), breach of contract, and intentional infliction of emotional distress [Doc. 20].

In September 2009, the Rowes met with Clay Griffin ("Griffin"), the President of Rembco, and Bill King ("King"), the Operations Manager of Rembco, to discuss Rowe taking a job with Rembco [*Id*.]. They discussed that Rowe wanted to retire at Rembco, but the exact number of years of employment and the age at which Rowe wanted to retire was not discussed [*Id*.]. Griffin extended an offer of employment to Rowe in a letter dated September 15, 2009 [*see* Doc. 24-4], and Rowe was hired by Rembco on or about October 19, 2009 as a Superintendent of Projects [*Id*.; *see also* Doc. 20]. The Rowes considered the September 15, 2009 letter Rowe's employment contract with Rembco, and there were no other written documents constituting a contract [Doc. 25].

Plaintiffs allege that the contract provided that "[a]lthough we are offering you a job as Superintendent, it is with the intent and expectation that you . . . would move into a higher level management position in about 6 months" [Doc. 20]. Plaintiffs also allege that the employment contract "inferred that [Rowe] would have job security" [*Id*.]. Further, plaintiffs allege that it provided that Rembco would "pay [Rowe's] lodging and meal expenses while in Knoxville as through [he] was out of town," agreed to compensate Rowe "with a compensation deferral program," and agreed "to pay a $400 per month stipend for a company vehicle, and for oil changes of said vehicle" [*Id*.].

Rowe accepted Rembco's offer and was subsequently terminated on March 11, 2010 [Doc. 25]. During his employment, Rembco provided Blue Cross/Blue Shield health insurance for Rowe [*Id*.]. Rowe was given the option of continuing his health coverage through COBRA at the time of his termination, but he was unable to afford the coverage

[*Id.*]. After Rowe's employment was terminated, he did not make any report to any local, state, or federal government agency, informing them that Rembco violated the ADA, nor did he make any report to the Equal Employment Opportunity Commission ("EEOC") [*Id.*].

Prior to his employment with Rembco, Rowe did not have any physical limitations or restrictions, and nothing hindered, restricted, or limited him in doing any job tasks related to his job at Rembco [*Id.*]. Prior to being employed by Rembco, however, Rowe had a triple bypass, a fact he shared with Griffin prior to being hired [*Id.*; *see also* Doc. 20]. At no time while he was working with Rembco did Rowe develop any other health condition or issues or problems that affected his ability to do his job [*Id.*]. Further, Rowe did not make any requests for Rembco to provide him any special consideration or accommodation because of any physical, mental, or other health condition [*Id.*]. Also, Mrs. Rowe did not consider her husband to have any kind of impairment during his employment with Rembco [*Id.*].

Rembco submits that neither it nor any of its officers conducted themselves in an outrageous way toward Rowe, nor did they conduct themselves in a way that was beyond all bounds of decency or atrocious or utterly intolerable [*Id.*]. They further submit that Rowe nevertheless experienced emotional distress as a result of his termination [*Id.*].

Plaintiffs allege that Mrs. Rowe quit her job in reliance upon the terms and conditions of the employment contract [Doc. 20]. Rembco submits that Mrs. Rowe was never offered employment nor employed by Rembco [*Id.*]. Further, Rembco submits that there was no discussion or expectation that she perform any role because her husband was going to be employed by Rembco [*Id.*].

3

Case 3:10-cv-00164-TAV-HBG Document 29 Filed 08/03/11 Page 3 of 15 PageID #: 266

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citation omitted); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

---

[1] Rule 56 was recently amended, but "[t]he Committee Notes explain that the 'standard for granting summary judgment remain[s] unchanged' and that the recent amendment of the rule 'will not affect continuing development of the decisional law construing and applying' the standard." *Blaney v. Cengage Learning, Inc.*, No. 1:09-CV-934-HJW, 2011 WL 1532032, at *2 (S.D. Ohio Apr. 22, 2011) (citing the advisory committee notes).

The Court notes again that plaintiffs have not responded to defendant's motion for summary judgment. Non-response standing alone, however, is not determinative of whether summary judgment is appropriate. *Aquent, LLC v. United States*, No. 08-15275, 2011 U.S. Dist. LEXIS 40132, at *1 (E.D. Mich. Apr. 13, 2011) (discussing the former version of Rule 56 and noting that "the non-movant's failure to respond does not relieve the movant of its burden to establish that 'the moving party is entitled to judgment as a matter of law'"). Relevant to a party's failure to respond is Rule 56(e), which provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2); 56(e)(3).[2] Accordingly, the Court examines the motion and supporting materials to determine if summary judgment is appropriate.

**III. Analysis**

Defendant submits that the material facts cited in support of its motion for summary judgment are not in dispute, as they are taken from plaintiffs' own deposition testimony [Doc. 25]. Further, defendant submits that plaintiffs are unable to prove the essential elements of their four causes of action, entitling defendant to summary judgment [*Id.*].

---

[2]The Advisory Committee Notes for the 2010 amendments indicate that the Rule was revised to preclude summary judgment from being granted by default, even "if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56 advisory committee's note.

### A. ERISA

Defendant argues that plaintiffs make a blanket allegation that Rembco violated ERISA in the amended complaint, but fail to cite to any specific section that Rembco violated [Doc. 25]. Further, defendant submits that a reading of the amended complaint does not reveal any factual allegations that support a violation of ERISA, except that Rowe's bypass surgery "was a contributing factor in his termination" [*Id.*].

ERISA provides that it is unlawful for an employee to be discharged "for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. Under § 510 of ERISA, an employee has an enforceable claim if his employer discharged him for the purpose of depriving him continued participation in his employee benefit plan. *Kross v. W. Elec. Co., Inc.*, 701 F.2d 1238, 1243 (7th Cir. 1983). "In order to prevail on such a claim, [he] must show that her employer had a specific intent to violate ERISA. [He] need not show that the employer's sole purpose in discharging [him] was to interfere with [his] health benefits, but must show that denial of benefits was a motivating factor in the decision." *Schlett v. Acvo Fin. Servs., Inc.*, 950 F. Supp. 823, 834 (N.D. Ohio 1996) (citing *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir.1992)).

As defendant demonstrates, plaintiffs have not offered any such factual proof. In his deposition, Rowe testified:

> Q: Did Rembco terminate your employment in order to deny you participation in a health insurance program?
>
> A: (Pausing.) I don't know.

6

> . . .
>
> Q: Okay. Well, do you have any facts, proof, evidence, to support that you were in any way discriminated against by Rembco because you'd had heart bypass surgery?
>
> A: I do not.
>
> Q: Do you have any proof, facts, or evidence that you were discriminated against because you had any other health condition or problem?
>
> A: I do not.

[*Id.*]. Mrs. Rowe also testified:

> Q: . . . Do you have any factual information that Rembco fired Mr. Rowe so that he would not be able to participate in their health insurance program?
>
> A: I don't have anything factual, no sir.
>
> Q: Do you have any suspicion that to be the case?
>
> A: That they terminated him in order to not have to add him onto their insurance, is that what you're asking?
>
> Q: Yes, ma'am.
>
> A: I would have to say no, I don't believe that was the reason that they terminated him.

[*Id.*].

In light of this testimony and the lack of any counter evidence in the record, the Court finds that defendant is entitled to summary judgment on plaintiffs' ERISA claim. The ERISA claim will be dismissed.

7

## B. ADA

Prior to filing a federal action for violation of the ADA, a would-be plaintiff must satisfy two prerequisites: (1) file timely charges of employment discrimination with the EEOC, and (2) receive and act upon the EEOC's statutory notice of the right to sue. 42 U.S.C. § 12117(a); *see also Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) ("An employee may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC because he or she has not exhausted his or her remedies."). "A right-to-sue letter from the EEOC indicates to the Court that the plaintiff has exhausted her administrative remedies." *Westermeyer v. Ky. Dep't Of Pub. Advocacy*, No. 2:10-131-DCR, 2011 WL 830342, at *6 (citing *Parry*, 236 F.3d at 309). "The failure to obtain a right-to-sue letter is not a jurisdictional defect, but it is a condition precedent." *Id.* (citing *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998)). "Consequently, the plaintiff can cure a failure to meet the condition precedent after initiating suit." *Id.* (citing *Portis v. Ohio*, 141 F.3d 632 (6th Cir.1998)).

Defendant contends that plaintiffs have not established that they have exhausted all administrative remedies, nor produced a right-to-sue letter [Doc. 25]. Further, defendant submits that plaintiffs' deposition testimony demonstrates that Rowe never filed a charge with the EEOC or any other agency [*Id.*]. In particular, defendant cites the following testimony of Rowe:

> Q: . . . After being terminated by Rembco, did you make any report to any local, state or federal government agency, office or organization, telling them that Rembco violated the Americans with Disabilities Act?

8

> A: Only person I've talked to was my attorney after the date that Clay had his discussion with me and was supposed to get back with me . . .
>
> . . .
>
> Q: . . . After you no longer worked for Rembco, have you specifically made any report to the Equal Employment Opportunity Commission about Rembco?
>
> A: I have not.

[*Id*.]. The Court accordingly concludes that plaintiffs' ADA claim should be dismissed for failure to exhaust administrative remedies.

Defendant also argues that the claim should be dismissed because plaintiffs fail to state a claim under the ADA. As dismissals based upon failure to exhaust are without prejudice, the Court considers this argument as well. *See Erickson v. Newberry*, No. 10-363-KSF, 2010 WL 4316886, at *2 (E.D. Ky. Oct. 26, 2010) (citing *Parry*, 236 F.3d at 309) (dismissing ADA claim without prejudice for failure to exhaust administrative remedies).

"To establish a prima facie case, [a p]laintiff must show that (1) he was "disabled" under the ADA, (2) he was otherwise qualified to perform the essential functions of the job; (3) he suffered adverse employment action; and (4) he was replaced by a nondisabled person." *Parry*, 236 F.3d at 310; *see also Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007). Under the ADA, "disability" is defined as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or

9

(C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1). "Regarded as having such an impairment" means:

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3).

Defendant submits that Rowe does not have an impairment and therefore is not disabled under the ADA. In support, defendant points to the testimony of Rowe:

Q: Number one, at the time you were employed by Rembco did you have any physical impairment?

A: I did not have nothing except what you already know about, and that's not a physical impairment.

Q: You're talking about your heart bypass surgery in 2003?

A: Right, and that's not an impairment.

Q: That did not impair you in any way?

A: No.

Q: Did not limit your ability to work in any way?

A: No.

Q: You don't claim to be physically impaired or limited, do you?

10

A: No.

Q: Did you ever claim or tell anyone at Rembco that you had any physical impairments or limitations?

A: I never said anything about impairment or limitations but the bypass was discussed.

[Doc. 25]. Defendant also submits the testimony of Mrs. Rowe:

Q: Did Mr. Rowe have any physical impairment or limitations that substantially limited any of his ability to do anything, prior to going to work for Rembco?

A: No, sir.

Q: Was there any change in his physical, mental health, medical condition, at the time he worked for Rembco that would've limited him in any way to work at Rembco?

A: No, sir.

Q: Was there any change in his mental, physical health, or mental condition, that while he was working at Rembco would've limited him in doing any kind of life activity?

A: No, sir.

Q: I take it, then, you do not consider Mr. Rowe to have any kind of impairment?

A: No, sir.

[*Id.*].

In light of this testimony and the lack of any counter evidence in the record, the Court finds that summary judgment is appropriate. Plaintiffs' ADA claim will be dismissed for failure to establish that Rowe was disabled under the ADA.

11

## C. Breach of Contract

"Tennessee has long adhered to the employment-at-will doctrine in employment relationships not established or formalized by a contract for a definite term." *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002) (citing *Bennett v. Steiner–Liff Iron & Metal Co.*, 826 S.W.2d 119, 121 (Tenn. 1992)). "Under this 'employment at will' doctrine, both the employer and the employee are generally permitted, with certain exceptions, to terminate the employment relationship 'at any time for good cause, bad cause, or no cause.'" *Id.* at 857–58 (citing *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 574 (Tenn. 1999)). "This relationship recognizes (1) that employers should be free to make their own business judgments without undue court interference and (2) that employees may 'refuse to work for a [person] or company' and 'may exercise [their rights] in the same way, to the same extent, for the same cause or want of cause as the employer.'" *Id.* at 858 (citations omitted). Indeed, the Tennessee Supreme Court "has noted that an employer's ability to make and act upon independent assessments of an employee's abilities and job performance as well as business needs is essential to the free-enterprise system." *Id.* (citations and quotation marks omitted). Further, there is a presumption in Tennessee that an employee is employed at will. *Davis v. Conn. Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990); *McGee v. Best*, 106 S.W.3d 48, 60 (Tenn. Ct. App. 2002) (citation omitted). "This presumption must be overcome by specific language guaranteeing a definite term of employment." *Davis*, 743 F. Supp. at 1280.

Case 3:10-cv-00164-TAV-HBG Document 29 Filed 08/03/11 Page 12 of 15 PageID #: 275

A review of the record reveals that there was no contract for a definite term between Rowe and Rembco. First, the letter that plaintiffs allege constitutes the employment contract between the parties [Doc. 24-4] does not provide any specific language guaranteeing a definite term of employment. Although the letter sets forth terms of Rowe's employment as a Superintendent, including Rowe's salary and benefits, it does not state in any specific terms the duration of that employment. The most relevant language in the letter provides:

> Although we are offering you a job as a Superintendent, it is with the intent and expectation that you would move into a higher management position in about 6 months. As one possibility, we foresee a need for someone to work on improving our drilling production across the company . . . perhaps that would be a good fit for you. In a few months, we'll have a better idea of your strengths and our needs, and I'm confident that we can work out a position that plays well to both. Until then, running a crew will provide you plenty of hands-on training in the type of work we do.

[Doc. 24-4]. This language, however, contains no specific language that guarantees a certain term of employment, and it in no way guarantees employment until retirement as Rowe maintains [*See* Doc. 24-1]. Further, the deposition testimony indicates that Griffin and King never discussed a retirement date with Rowe, and no other written document was produced regarding Rowe's employment [*See* Docs. 24-1, 24-2, 24-3, 24-4].

In addition, the deposition testimony indicates that Rowe wanted to retire at Rembco and shared that information with Griffin and King [*See* Doc. 24-1]. Rowe's assertion that he would have continued employment until he retired, however, does not rebut the presumption of at-will employment. Tennessee "courts have long held that an oral contract for life time employment or permanent employment amounts to an indefinite hiring

13

terminable at the will of either party where the employee furnishes no consideration other than the services required in the agreement." *Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924, 934 (Tenn. Ct. App. 1984). The record does not indicate that any additional consideration was furnished by Rowe.

Accordingly, the Court finds that summary judgment on plaintiffs' breach of contract claim is appropriate. The breach of contract claim will be dismissed.

**D. Intentional Infliction of Emotional Distress**

To demonstrate intentional infliction of emotional distress in Tennessee, a plaintiff must establish the following elements: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "This is an exacting standard requiring the plaintiff to show that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999) (citation omitted).

Rowe testified that the cause of his emotional distress was the termination of his employment, but he also testified that he did not consider defendant's actions to be outrageous, beyond all bounds of decency, or utterly intolerable [*See* Doc. 24-1]. He did, however, testify that defendant's behavior was atrocious because he never expected his employment to be terminated, but the Court must determine whether defendant's actions

14

would have been outrageous "to an average member of the community." *Bain*, 936 S.W.2d at 623. The Court cannot so find here in light of the evidence before it. In sum, because there is no evidence that defendant intentionally or recklessly engaged in conduct so outrageous that it went "beyond all possible bounds of decency" and was "atrocious, and utterly intolerable in a civilized community," summary judgment is appropriate on plaintiffs' claim for intentional infliction of emotional distress. The claim will be dismissed.

**IV. Conclusion**

For the reasons explained above, the Court finds that summary judgment on all of plaintiffs' claims is appropriate. Defendant's Motion for Summary Judgment [Doc. 24], therefore, will be **GRANTED** and plaintiffs' claims will be **DISMISSED** in their entirety. The Clerk of Court will be **DIRECTED** to close this case. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE